UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| JOHN BRYANT, individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>*v.*<br><br>MUTUAL OF OMAHA INSURANCE COMPANY,<br><br>*Defendant.* | Case No.<br><br>**COMPLAINT FOR:**<br><br>1. **VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227(b)**<br><br>**Class Action**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff John Bryant ("Plaintiff") by his undersigned counsel, for this class action complaint against Mutual of Omaha Insurance Company, and its present, former, or future direct and indirect parent companies, subsidiaries, affiliates, agents, and/or other related entities ("Mutual of Omaha" or "Defendant"), alleges as follows:

## I. INTRODUCTION

1. <u>Nature of Action</u>. Plaintiff, individually and as class representative for all others similarly situated, brings this action against Mutual of Omaha for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA").

Mutual of Omaha engaged in automated telemarketing in violation of the TCPA using pre-recorded messages that were sent to cellular telephones.

2. Because telemarketing campaigns generally place calls to hundreds of thousands or even millions of potential customers *en masse*, Plaintiff brings this action on behalf of a proposed nationwide class of other persons who received illegal telemarketing calls from or on behalf of Defendant.

## II.   PARTIES

3. Plaintiff John Bryant is an individual residing in Virginia in this District.

4. Defendant Mutual of Omaha Insurance Company is a Nebraska company with its principal place of business in Nebraska.

5. Defendant engages in telemarketing into this District, as it did with the Plaintiff.

## III.   JURISDICTION AND VENUE

6. <u>Jurisdiction</u>.  This Court has subject matter jurisdiction over Plaintiff's TCPA claim pursuant to 28 U.S.C. § 1331 because Plaintiff's TCPA claim arise under the laws of the United States, specifically, 47 U.S.C. § 227.

7. <u>Personal Jurisdiction</u>.  This Court has personal jurisdiction over Mutual of Omaha because it sells insurance in Virginia, and this action arises from calls into Virginia to sell insurance.

8. <u>Venue</u>.  Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

## IV. THE TELEPHONE CONSUMER PROTECTION ACT OF 1991, 47 U.S.C. § 227

9. In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing practices.

10. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).  The TCPA provides a private cause of action to persons who receive calls in violation of Section 227(b)(1)(A). 47 U.S.C. § 227(b)(3).

11. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

12. The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

13. In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, it ordered:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service."

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote omitted).

### V. FACTUAL ALLEGATIONS

14. Mutual of Omaha offers insurance policies to consumers through its network of agents, including Wealth Harbor Financial Insurance Solutions ("Wealth Harbor").

15. One of Wealth Harbor's strategies for marketing Mutual of Omaha's insurance policies and generating new customers is telemarketing.

16. Wealth Harbor's telemarketing includes the use of pre-recorded messages to generate new business for Mutual of Omaha.

17. Recipients of these calls, including Plaintiff, did not consent to receive such telephone calls.

18. Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

**Calls to Plaintiff Bryant**

19. Plaintiff Bryant's telephone number, (XXX)-XXX-0212, is registered to a cellular telephone service.

20. On August 5 and 6, 2021, the Plaintiff received pre-recorded calls from the Wealth Harbor.

21. Each of these calls was received from a spoofed Virginia area code telephone number.

22. During each call, an interactive recorded message played, starting with "This is James with American Benefits on a recorded line, how are you today?"

23. The dialog, cadence, and voice inflections of "James" during each of the calls was identical, evidencing a prerecorded voice.

24. During each of the calls, the Plaintiff was connected to a live operator that solicited the Plaintiff's purchase of an insurance policy and offered to transfer the Plaintiff to a "licensed insurance agent".

25. During the August 6 call, the Plaintiff was successfully transferred to a licensed insurance agent.

26. Immediately after the transfer, a message was playing stating: "Thank you for calling Mutual of Omaha, your call will be recorded."

27. The licensed insurance agent then joined the call and identified as "Dave Endress with Mutual of Omaha".

28. Dave Endress attempted to solicit Plaintiff's purchase of an insurance policy from Mutual of Omaha.

29. Dave Endress provided the telephone number 402-351-1082 as a call back number.

30. When Plaintiff called back the number, it was answered by a recording that identified "Mutual of Omaha".

31. Plaintiff also received a call back from Dave Endress using this telephone number.

32. During that call back, Dave Endress stated that he was an employee of Mutual Omaha working out of its corporate headquarters.

33. In response the Plaintiff requested for a call back from a Mutual of Omaha supervisor.

34. Plaintiff was called back by "Holly" who identified as a supervisor with Mutual of Omaha.

35. During this call, the Plaintiff asked whether he was on Mutual of Omaha's internal do not call list and Holly stated: "We do not have an internal do not call list. We partner with third parties who collect names who call people. I as a sales supervisor have no way to check this list".

36. Prior to the series of calls in August, on April 1, 2021, Plaintiff received a call from a spoofed Virginia area code number with a live operator that identified as "Roger … calling on behalf of American Benefits," and soliciting the Plaintiff's purchase of an insurance policy.

37. During that call the Plaintiff was transferred to another live operator that identified as "Eric … a licensed life insurance broker" working for "Global Insurance under the umbrella of Wealth Harbor Financial."

38. "Eric" provided the website globalinsurancegroupinc.com, which identifies Wealth Harbor's office address as the address for Global Insurance; however Global Insurance is not a registered company or fictitious name.

39. Eric also provided Wealth Harbor's national producer number.

40. The Plaintiff did not provide his prior express written consent to Defendant or Wealth Harbor to receive the calls.

41. Plaintiff and all members of the Class, defined below, have been harmed by the acts of Defendant because their privacy has been violated, they were annoyed and harassed, and, in some instances, they were charged for incoming calls. The calls occupied their cellular telephone lines, rendering them unavailable for legitimate communication.

## VI. MUTUAL OF OMAHA'S LIABILITY

42. For twenty-five years the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995).

43. On May 9, 2013, the FCC released a Declaratory Ruling holding that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers."[1]

---

[1] *In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd 6574, 6574 (¶ 1) (2013) ("May 2013 FCC Ruling").

44. In that ruling, the FCC instructed that sellers such as Mutual of Omaha may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*May 2013 FCC Ruling*, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

45. Wealth Harbor was required to promote Mutual of Omaha's products on their telemarketing calls in order to potentially generate new customers, and did so, as they did with the Plaintiff.

46. During this time, Mutual of Omaha was knowingly and actively accepting the business that originated through the illegal telemarketing calls through the issuance of insurance policies.

47. Mutual of Omaha derived a benefit from Wealth Harbor's interaction with the Plaintiff by the attempted issuance of a policy.

48. Moreover, Mutual of Omaha maintained interim control over Wealth Harbor's actions.

49. For example, Mutual of Omaha had ability to prohibit it from using pre-recorded methodology to contact potential customers.

50. Mutual of Omaha failed to make such an instruction to Wealth Harbor, and as a result, is liable for Wealth Harbor's conduct.

51. Mutual of Omaha also gave interim instructions to Wealth Harbor by providing the volume of calling and leads it would purchase.

52. Mutual of Omaha gave further interim instructions to Wealth Harbor by providing the states that those companies were allowed to make calls into and restricting other states that they could not.

> Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-593 (¶ 46). Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 (¶ 46).

### VII.  CLASS ACTION ALLEGATIONS

53. <u>Class Definition</u>. Pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3), Plaintiff brings this case on behalf of Class (the "Class") defined as follows:

> All persons to whom: (a) Wealth Harbor and/or a third party acting on Wealth Harbor's behalf made one or more non-emergency telephone calls; (b) to their cellular telephone numbers; (c) through the use of an artificial or prerecorded voice; (d) for the purpose of promoting Mutual of Omaha's products; (e) at any time in the last four years through the date of trial.

54. <u>Numerosity</u>. The Class is so numerous that joinder of all its members is impracticable. On information and belief and on the basis of the *en masse* calling practices at issue, the Class has at least hundreds of members.

55. <u>Commonality</u>. There are numerous questions of law and fact common to Plaintiff and members of the Class. These common questions of law and fact include, but are not limited to, the following:

   a. Whether Wealth Harbor used a prerecorded voice;

   b. Whether Wealth Harbor purchased batches of leads of prospects who had not consented to be called by it;

   c. Whether Mutual of Omaha is vicariously liable for Wealth Harbor's acts; and

   d. Whether Defendant's conduct was willful or knowing such that damages should be trebled.

56. <u>Typicality</u>. Plaintiff's claims are typical of the claims of the Class. Plaintiff's claims and those of the Class arise out of the same course of conduct by Defendant and are based on the same legal and remedial theories.

57. <u>Adequacy</u>.  Plaintiff will fairly and adequately protect the interests of the Class.  Plaintiff has retained competent and capable counsel with experience in TCPA and consumer class action litigation.  Plaintiff and his counsel are committed to prosecuting this action vigorously on behalf of the Class and have the financial resources to do so.  Neither Plaintiff nor his counsel has interests contrary to or conflicting with those of the proposed Class.

58. <u>Predominance</u>. Defendant has engaged in a common course of conduct toward Plaintiff and members of the Class.  The common issues arising from this conduct that affect Plaintiff and members of the Class predominate over any individual issues.  For example, the TCPA's statutory damages obviate the need for mini-trials on actual damages. Adjudication of these common issues in a single action has important and desirable advantages, including judicial economy.

59. <u>Superiority</u>.  A class action is the superior method for the fair and efficient adjudication of this controversy.  Classwide relief is essential to compel Defendant to comply with the TCPA.  The interest of individual members of the Class in individually controlling the prosecution of separate claims against Defendant is small because the damages in an individual action for violation of the TCPA are small.  Management of these claims is likely to present significantly fewer difficulties than are presented in many class actions because the calls at issue

are all automated and because the TCPA articulates bright-line standards for liability and damages.

60. <u>Injunctive and Declaratory Relief is Appropriate</u>. Defendant has acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class appropriate on a classwide basis.

### VIII. FIRST CLAIM FOR RELIEF
**(Violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227(b)(1)(A))**

61. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

62. The foregoing acts and omissions of Defendant and agent constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227(b)(1)(A), by making non-emergency calls to the cellular telephone numbers of Plaintiff and members of the Class using an artificial or prerecorded voice.

63. As a result of violations of the TCPA, 47 U.S.C. § 227(b)(1)(A), by Defendant and its agent, Plaintiff and members of the Class are entitled to an award of $500 in damages for each and every call made to their cellular telephone numbers using an artificial or prerecorded voice in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

64. Plaintiff and members of the Class are also entitled to and do seek injunctive relief prohibiting Defendant and its agent from violating the TCPA, 47 U.S.C. § 227(b)(1)(A), by making calls, except for emergency purposes, to any cellular telephone numbers using an artificial or prerecorded voice.

65. As a result of knowing and/or willful violations of the TCPA, 47 U.S.C. § 227(b)(1)(A), by Defendant and its agent Plaintiff and members of the Class are entitled to treble damages of up to $1,500 for each and every call made to their cellular telephone numbers using an artificial or prerecorded voice in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3).

## IX.     PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on his own behalf and on behalf of all members of the Class, prays for judgment against Wealth Harbor as follows:

A. Certification of the proposed Class;

B. Appointment of Plaintiff as representative of the Class;

C. Appointment of the undersigned counsel as counsel for the Class;

D. A declaration that actions complained of herein by Mutual of Omaha and/or its affiliates, agents, or related entities violate the TCPA;

E. An order enjoining Mutual of Omaha and its affiliates, agents and related entities from using pre-recorded messages to call cellular telephones, absent emergency circumstances;

F. Leave to amend this Complaint to conform to the evidence presented at trial; and

G. Orders granting such other and further relief as the Court deems necessary, just and proper.

## X.     DEMAND FOR JURY

Plaintiff demands a trial by jury for all issues so triable.

**JOHN BRYANT,**

**By Counsel:**

/s/ *Michael B. Hissam*
Michael B. Hissam (VSB # 76843)
Hissam Forman Donovan Ritchie PLLC
P.O. Box 3983
Charleston, WV 25339
t: 681-265-3802
f: 304-982-8056
mhissam@hfdrlaw.com